# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

ALAN E. OURY,

          Plaintiff,

          v.                            CAUSE NO.: 1:18-CV-148-HAB

ANDREW SAUL,
Acting Commissioner of Social Security,

          Defendant.

## OPINION AND ORDER

Plaintiff Alan E. Oury seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff alleges that he has been disabled since September 2014 due to physical and mental impairments.

## ANALYSIS

### A.  Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

## B.     The ALJ's Decision

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent her from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A); § 1382c(a)(3)(B).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and, if not (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)[1]; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

---

[1] As discussed in *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003), the Act and implementing regulations regarding DIB (contained in Title II of the Act and 20 C.F.R. Pt. 404 of the regulations) and SSI (contained in Title XVI of the Act

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since the alleged onset date. At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy of the right leg, coronary artery disease status post stenting, carotid stenosis, atrial fibrillation, cardiomegaly, obstructive sleep apnea, obesity, diabetes mellitus, bilateral mixed hearing loss, bilateral tinnitus, dysthymia, and intellectual disorder.

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 34.) Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except that he could only occasionally climb ramps and stairs. The ALJ also assessed other postural limitations related to balancing, stooping, kneeling, crouching and crawling. Additionally, the RFC included the following:

> [The claimant] is limited to hearing and understanding simple oral instructions. The claimant can occasionally communicate by phone, and is limited to performing simple, routine, and repetitive tasks. He is also limited to simple work-related decisions, and is limited to tolerating occasional changes in a routine work setting.

(R. 37.)

---

and 20 C.F.R. Pt. 416 of the regulations) are, for the most part, substantially identical. For convenience, the Court will generally cite herein to only the Title II statutes and regulations.

Based on the above RFC, the ALJ found that Plaintiff was able to perform his past relevant work as a wire stripper. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

## C.    Residual Functional Capacity

On appeal, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. He submits that the ALJ did not properly account for either his moderate limitations in his ability to maintain concentration, persistence, and pace, or his unresolved hearing problems.

RFC measures what work-related activities a claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). It is the most the claimant can still do. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)). A claimant's RFC must be based upon the medical evidence in the record and other evidence, such as testimony by the claimant or her friends and family. 20 C.F.R. § 404.1545(a)(3). Although an ALJ is not required to discuss every piece of evidence, he must consider all the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); *Clifford*, 227 F.3d at 870–71. The ALJ must also consider the combined effect of all of the claimant's impairments, including those that are not severe. *See* 20 C.F.R. § 404.1545(e). An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Caselaw in the Seventh Circuit "emphasizes that 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). Describing tasks as "simple, routine, and repetitive" refers to "unskilled work" that can be learned by demonstration in less than thirty days, 29 C.F.R. § 404.1520, which is unrelated to whether a person with limitations in concentration, persistence, and pace "can perform such work." *Varga*, 794 F.3d at 814; *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.").

Here, the ALJ noted that the psychological consultant examiner, Dr. Boen, stated in an opinion he issued on October 13, 2015, that Plaintiff "would have trouble understanding what he was asked to do on [a] job, trouble remembering what he was asked to do on a job, and would not be able to concentration on a job." (R. 44 (citing Ex. 6F at 2).) The ALJ noted Dr. Boen's finding that Plaintiff "would not be able to stay on task." (*Id.*) However, the ALJ only gave Dr. Boen's opinion partial weight. Although he credited Dr. Boen's opinion that Plaintiff would get along with coworkers and a boss, because it was consistent with the evidence in the record, he concluded that the rest of Dr. Boen's opinion was "vague." (*Id.*) Particularly, Dr. Boen did "not specify the degree of limitation experienced by the claimant in the areas of understanding, remembering, and concentrating." (*Id.*)

Continuing with his analysis of Dr. Boen's opinion, the ALJ stated,

> Also, his findings do not appear consistent with the overall record as discussed above, which shows that despite some abnormalities in testing of the claimant's concentration, recall, memory, fund of information, and intelligence, the claimant has typically been found to be oriented to person, place, and time. In addition, he demonstrates a normal mood, a normal affect, normal behavior, normal judgment, and normal thought content. The claimant is able to maintain a part time job as a janitor, is able to use the internet to look up sports scores and schedules, is able to do chores, can cook simple foods, and is able to drive (Hearing Testimony, 5E). He does not need reminders for his personal care or medications (5E). In addition, the undersigned notes that the claimant has worked in the past at SGA levels despite his intellectual impairment.

(R. 44.)

In comparison to the weight assigned to Dr. Boen's opinion, the ALJ gave "significant weight" to the opinions of state agency consultants who reviewed Plaintiff's file after Dr. Boen conducted his examination. Although these consultants found that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, and moderate limitations in the ability to carry out detailed instructions, they concluded that Plaintiff would be able to perform unskilled work. (R. 44 (citing Exs. 1A, 2A, 7A & 8A).) Thus, translating their findings into a specific RFC assessment, they noted that Plaintiff would be limited to understanding, remembering, and performing simple routine tasks.

The ALJ gave these opinions significant weight because they were consistent with the available evidence, such as "the evidence showing that the claimant is typically oriented to person, place, and time, and he demonstrates a normal mood, a normal affect, normal behavior, normal judgment, and normal thought content." (R. 45.) The ALJ

thought the restrictions were consistent with "the claimant's ability to maintain a part time job as a janitor and manage his activities of daily living." (*Id.*) Additionally, the opinions were "well supported by the examiners' specialties and programmatic knowledge." (*Id.*)

This Court's review of the record shows that these state agency consultants indeed believed that Plaintiff's only significant (described as "moderate") limitations in connection with concentration and persistence were related to carrying out detailed instructions. In other areas, such as the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, they assigned a rating of "not significantly limited." These consultants noted Dr. Boen's findings, but thought they were not entitled to full weight because they were not consistent with Plaintiff's work history and activities of daily living. With respect to work, it was noted that Plaintiff worked from December 2014 to May 2015 and had no issues regarding task completion. In their opinion, Plaintiff could perform unskilled work.

It is appropriate for an ALJ to choose between competing medical opinions. Here, because the same essential reasons were offered when considering the weight the ALJ assigned to Dr. Boen's opinion and to the opinions of the other consultants concerning Plaintiff's ability to concentrate and stay on task, the Court will look to those reasons. First, the ALJ noted that Dr. Boen did not specify the degree of limitation experienced by Plaintiff in the areas of understanding, remembering, and concentrating. It is true that Dr. Boen did not express the limitation in terms of degrees. He stated, after conducting

testing, that Plaintiff "would have trouble understanding what he was asked to do on [a] job, trouble remembering what he was asked to do on a job, and would not be able to concentration on a job," and that he "would not be able to stay on task." (R. 463.) This was an obvious expression of a limitation in concentration, persistence, and pace. Thus, to discount it to the degree the ALJ did here—assigning no limitation for staying on task as long as it was a simple and repetitive one—there must be other evidence in the record the ALJ relied upon.

According to the ALJ's decision, that evidence included the fact that Plaintiff was typically found to be oriented to person, place, and time, and he demonstrated a normal mood, a normal affect, normal behavior, normal judgment, and normal thought content. The ALJ does not explain how being oriented to person, place, and time, or exhibiting normal affect or mood are related to the ability to concentrate or to stay on task during a typical eight-hour workday. Dr. Boen himself thought Plaintiff's mood, affect, and behavior was normal, yet found that he would have trouble concentrating and staying on task.

The ALJ also cited Plaintiff's ability to maintain a part time job as a janitor. The job, however, was only two days per week, for a two-hour shift. Nothing in the record suggests that this extremely limited employment is inconsistent with a conclusion that Plaintiff cannot sufficiently stay on task and concentrate during an eight-hour workday. Plaintiff's activities of daily living, which included chores, cooking simple foods, and driving were also cited as evidence that was inconsistent with Dr. Boen's opinion, as was using the internet to look up sports scores and schedules. The ALJ's discussion does not

contain the required logical and accurate bridge, as there is no explanation how the cited activities are inconsistent with a limitation on concentration, persistence, or pace in the performance of sustained work activities in an ordinary work setting on a regular and continuing basis.

Finally, the ALJ noted that Plaintiff had worked in the past at SGA levels despite his intellectual impairment. Although this is an accurate statement, there is no indication of the period of time the ALJ was referencing. This timing would seem to be an important consideration. The ALJ recognized as much when he gave little weight to opinion evidence from a source who administered psychological testing in August 2008. That source concluded that Plaintiff could only engage in competitive employment if the work was rote, required minimal rush periods, and the employer accepted Plaintiff's limitations. The ALJ noted that this was well prior to Plaintiff's alleged onset date. If this assessment is not useful because it is removed from the alleged onset date, it is not clear what makes his previous SGA, which was also removed, a more useful indication of Plaintiff's current limitations.

The ALJ, like the State agency consultants, did not give full weight to Dr. Boen's assessment that Plaintiff would not be able to concentrate and stay on task. The consultants reasoned that it was not consistent with Plaintiff's work and activities of daily living. To the extent that work and daily activities are the same as those cited by the ALJ, the explanations are lacking to the same degree as discussed above. Neither these activities nor the employment he maintained prior to the alleged onset date are

inconsistent with the opinion that he would be off task during some portion of the workday as a symptom of his intellectual disorder.

The consultants also noted that Plaintiff worked from December 2014 to May 2015 without task completion issues. The job at issue was janitorial work for the City of Angola Housing Authority. Plaintiff worked for four hours a day, five days per week. The consultants did not mention the custodial jobs at Rise, Inc., or Elliot Manor, both of which Plaintiff lost for not following directions. Additionally, although it is accurate that Plaintiff performed janitorial work from December 2014 through May 2015, the Court cannot locate any information in the record to support the State agency consultant's statement that he had no issues regarding task completion. The Plaintiff reported that he left the job to undergo a hernia surgery. According to Plaintiff, when he recovered, his employer "convinced [him] to quit. [He] believe[s] that they had someone they wanted to hire full time and they didn't feel [he] worked fast enough." (R. 271.)

"Employers are entitled to demand that their employees stick with the job, once they have been trained to do it; the length of time it takes someone with borderline intelligence to learn a job is not the same as the ability of that person to perform consistently once trained." *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003). Although the ALJ found Plaintiff to have moderate difficulties maintaining concentration, persistence, and pace, he found Plaintiff was still capable of performing unskilled work to an employer's expectations. The logical bridge from the evidence to this conclusion has not been built, as many of the factors both he and the State agency consultants cited were not related to a limitation in this area of functioning or were not fully developed. The

opinions of the State agency consultants could have provided the necessary substantial evidence to support the conclusion that Plaintiff could perform simple, routine, and repetitive tasks, had those decision been adequately supported. The reasons for rejecting Dr. Boen's opinion, however, were based on purported inconsistencies that are not borne out in the record. The ALJ should have an opportunity to further address whether there is sufficient evidence in the record supporting his conclusion that the RFC and the hypothetical to the ALJ need not contain any limitations related to concentration, persistence, and pace for the performance of unskilled work.

Because the Court is remanding on this ground, it does not address the other challenges Plaintiff raises in this appeal.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion and Order.

SO ORDERED on September 6, 2019.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT